**CORRECTED**

# In the United States Court of Federal Claims
**OFFICE OF SPECIAL MASTERS**
No. 20-0365V
UNPUBLISHED

|  |  |
|---|---|
| DEREK STRAND,<br><br>                    Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>                    Respondent. | Chief Special Master Corcoran<br><br>Filed: January 18, 2023<br><br>Special Processing Unit (SPU); Findings of Fact; Ruling on Entitlement; Influenza (Flu); Shoulder Injury Related to Vaccine Administration (SIRVA). |

*Ronald Craig Homer*, Conway, Homer, P.C., Boston, MA, for Petitioner.

*Emilie Williams*, U.S. Department of Justice, Washington, DC, for Respondent.

### **RULING ON ENTITLEMENT**[1]

On March 31, 2020, Derek Strand filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act") alleging that he suffered a shoulder injury related to vaccine administration ("SIRVA") as a result of an influenza ("flu") vaccine administered to him on November 12, 2018. Petition, ECF No. 1 at 1. The case was assigned to the Special Processing Unit of the Office of Special Masters.

---

[1] Because this unpublished opinion contains a reasoned explanation for the action in this case, I am required to post it on the United States Court of Federal Claims' website in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services). **This means the opinion will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

For the reasons discussed below, I find it most likely that Petitioner's injury and its residual effects lasted for more than six months; that the onset of Petitioner's shoulder pain occurred within 48 hours of vaccination; that Petitioner suffered from reduced range of motion; and that Petitioner is otherwise entitled to compensation under the Vaccine Act.

## I.   Relevant Procedural History

After initiating his claim, Petitioner filed additional records and an amended statement of completion in April 2020. ECF Nos. 6-10. On July 7, 2021, Respondent filed a status report indicating his willingness to informally resolve this case. ECF No. 33. Although the parties engaged in settlement discussions throughout the summer of 2021, the parties reached an impasse that fall. ECF No. 36.

Petitioner subsequently filed a motion for a ruling on the record encompassing both issues of entitlement and damages ("Motion") on September 16, 2021. ECF No. 40. Petitioner contends that he has met his burden of proof for both a Table SIRVA and off-Table claim based on the medical records. *Id.* Respondent filed his combined response and Rule 4(c) Report ("Response") on October 20, 2021. ECF No. 43. He argues that Petitioner has failed to establish that he suffered from the residual effects of his injury for greater than six months (the "severity requirement"). *Id.* at 4-5. Respondent also maintains that Petitioner has failed to establish that his symptoms began within 48 hours of vaccination, and that his "lack of a documented reduced range of motion is inconsistent with a Table SIRVA." *Id.* at 4-6. Respondent reserved the right to address Petitioner's request for damages until after entitlement is decided. *Id.* at 9.

## II.   Authority

Pursuant to Vaccine Act Section 13(a)(1)(A), a petitioner must prove, by a preponderance of the evidence, the matters required in the petition by Vaccine Act Section 11(c)(1). A Petitioner may prevail on his claim if he has "sustained, or endured the significant aggravation of any illness, disability, injury, or condition" set forth in the Vaccine Injury Table (the "Table"). Section 11(c)(1)(C)(i). The most recent version of the Table, which can be found at 42 C.F.R. § 100.3, identifies the vaccines covered under the Program, the corresponding injuries, and the time period in which the particular injuries must occur after vaccination. Section 14(a). If a claimant establishes that he has suffered a "Table Injury," causation is presumed.

Section 11(c)(1) also contains requirements concerning the type of vaccination received and where it was administered, the duration or significance of the injury, and the

lack of any other award or settlement. *See* Section 11(c)(1)(A), (B), (D), and (E). With regard to duration, a petitioner must establish that he suffered the residual effects or complications of such illness, disability, injury, or condition for more than six months after the administration of the vaccine. Section 11(c)(1)(D).

Effective for petitions filed beginning on March 21, 2017, SIRVA is an injury listed on the Vaccine Injury Table. *See* Vaccine Injury Table: Qualifications and aids to interpretation. 42 C.F.R. § 100.3(c)(10). The criteria are as follows:

> A vaccine recipient shall be considered to have suffered SIRVA if such recipient manifests all of the following: (i) No history of pain, inflammation or dysfunction of the affected shoulder prior to intramuscular vaccine administration that would explain the alleged signs, symptoms, examination findings, and/or diagnostic studies occurring after vaccine injection; (ii) Pain occurs within the specified time-frame; (iii) Pain and reduced range of motion are limited to the shoulder in which the intramuscular vaccine was administered; and (iv) No other condition or abnormality is present that would explain the patient's symptoms (e.g. NCS/EMG or clinical evidence of radiculopathy, brachial neuritis, mononeuropathies, or any other neuropathy).

*Id.*

## III. Relevant Factual Evidence

I have fully reviewed the evidence, including all medical records, affidavits, and the parties' briefing. I find most relevant the following:

- Petitioner is employed as a traveling registered nurse. Ex. 8 at 1-2. As required by his employer, Petitioner received a flu vaccine in his left deltoid on November 12, 2018. Ex. 1 at 2; Ex. 4 at 11; Ex. 8 at 2.

- In his affidavit, signed on March 31, 2020, Petitioner avers that "[i]mmediately upon receiving the injection I experienced extreme pain." Ex. 8 at 2.

- Caitlin Harvey submitted an affidavit dated March 31, 2020. In it, she recalls Petitioner "stating that his shoulder was in immense pain [the morning after vaccination], and I observed that it was nearly impossible for him to lift his arm past 90 degrees." Ex. 10 at 1.

- In his affidavit, Petitioner states that he started "having trouble putting on my shirt in the morning and often needed my partner's help. I could not reach my arm above

3

my head to grab things off the shelf at the grocery store, or cook meals without experiencing sharp pains in my shoulder. I was even having a difficult time at work assisting patients and performing my duties as a nurse. At that point, there was a significant loss of range of motion in my shoulder." Ex. 8 at 3-4.

- Petitioner further avers that he works closely with physical therapists and informed them about his shoulder pain. Ex. 8 at 4. Based on their recommendations, Petitioner began a home-based physical therapy routine. *Id.*

- Petitioner presented to Physician's Assistant ("PA") Julie Williams on December 26, 2018 – approximately six weeks post-vaccination. Ex. 5 at 5-8. The medical record documenting this visit sets forth Petitioner's complaint of "left shoulder pain that began after having a flu shot on the 12th of December." *Id.* at 5. (the same document also references the correct date of vaccination, however). *Id.* ("since Flu shot on 11/2, in Lft shoulder").

- Petitioner's symptoms were noted to include "DROM [decreased range of motion] and soreness." Ex. 5 at 5. On exam, Petitioner was determined to have "FROM" – or full range of motion – but also exhibited tenderness over the left acromioclavicular (AC) bursa, a positive Hawkins sign and positive empty can test. *Id.* at 6. Petitioner was diagnosed with bursitis of the left subacromial bursa. *Id.*

- Two days later, on December 28, 2018, Petitioner presented to Dr. Nathaniel Baer, an orthopedic specialist. Ex. 5 at 9-13. Petitioner reported "that he was given the flu vaccine in November . . . *[i]mmediately after that* and ever since he has had pain with range of motion in that shoulder. He has pain with the last 20-30 degrees of abduction and flexion and has been stiff in the shoulder ever since." *Id.* at 9 (emphasis added). On exam, Dr. Baer determined that the range of motion in Petitioner's left shoulder "is full in abduction[,] full in flexion and full in internal rotation to T5 symmetrically. He has mild positive Hawkins test[.]" *Id.* at 10. Dr. Baer's medical note reflects that Petitioner's symptoms could reflect "a shoulder injury related to vaccine administration for which there are multiple academic papers." *Id.* Petitioner was administered a subacromial steroid injection. *Id.* at 10-11.

- In his affidavit, Petitioner states that his left shoulder pain lessened within a week of receiving the December 28, 2018 steroid injection and continued to improve subsequently. Ex. 8 at 4-5. He notes that "I could put on my shirt again without assistance, get items on the top shelf at the grocery store, and go skiing again. Slowly, I introduced other activities like rock climbing, and things were beginning to become better." *Id.* at 5. However, Petitioner further avers that his left shoulder pain eventually returned and impacted his quality of life. *Id.* Although Petitioner

4

states that his symptoms returned "[t]wo or three months after" relocating to a new city, he does not set forth a detailed timeline. *Id*.

- Almost six months after his previous appointment, on June 27, 2019, Petitioner presented to Nurse Practitioner Korey Ham and reported immediate pain following vaccination. Ex. 6 at 5. In addition to noting that he "has been doing physical therapy," Petitioner indicated that he had pain "with adduction, external rotation, [and] extension. Discomfort is described as aching." *Id*. Petitioner was again assessed with bursitis of the left shoulder and was administered a second steroid injection. *Id*. at 7.

- In his supplemental affidavit, signed on September 16, 2021, Petitioner states that his shoulder pain has not resolved despite stretching and taking pain medication. Ex. 15 at 1. Petitioner further states that he "continues to seek guidance from licensed physical therapists I work with for techniques and stretches that will alleviate my shoulder pain. I am dedicated to the home exercise plan for my shoulder." *Id*.

## IV. Findings of Fact

### A. Severity

The first issue to be resolved is whether Petitioner has demonstrated that he suffered "residual effects or complications of [the injury alleged] for more than six months after the administration of the vaccine," as required for eligibility under the Vaccine Program. Section 11(c)(1)(D)(i).

There appears to be no dispute that Petitioner received the flu vaccine on November 12, 2018, and he therefore must demonstrate by preponderant evidence that his residual symptoms continued at least through May 12, 2019. *See, e.g., Herren v. Sec'y of Health & Human Servs.*, No. 13-100V, 2014 WL 3889070, at *2 (Fed. Cl. Spec. Mstr. July 18, 2014); *see also Hinnefeld v. Sec'y of Health & Human Servs.*, No. 11-328V, 2012 WL 1608839, at *4-5 (Fed. Cl. Spec. Mstr. Mar. 30, 2012) (dismissing case where medical history revealed that petitioner's Guillain-Barré syndrome resolved less than two months after onset).

The record establishes that Petitioner initially sought treatment for his shoulder injury on December 26, 2018 and again on December 28, 2018. However, Respondent argues that Petitioner has not provided preponderant evidence that his injury lasted beyond December 2018 because there are no medical records documenting the continuation of his symptoms between December 29, 2018 and June 27, 2019. Response at 5. And while Petitioner's June 27, 2019 documented complaint of left shoulder pain

indicates that Petitioner's "[t]herapy to date" included rest, ice, avoidance of activity, over-the-counter medication, home exercises and physical therapy, Petitioner did not produce any direct evidence of this course of treatment. *See* Ex. 6 at 5.

Nevertheless, Petitioner's affidavit and witness statement provide evidence that he continued to experience left shoulder pain and self-treated his symptoms during the first half of 2019 with ibuprofen, ice, and an at-home physical therapy routine recommended by his co-workers. *See* Ex. 8 at 5; Ex. 10 at 2. Although a petitioner cannot establish the length or ongoing nature of an injury merely through self-assertion, the fact that a petitioner did not receive medical treatment for a solid/continuous six-month period does not necessarily mean that there are no remaining residual effects of the injury. *See, e.g., Herren*, 2014 WL 3889070, at *3 (finding that petitioner suffered from residual symptoms that, due to their mild nature, did not require medical care). Moreover, I find that Petitioner's decision to administer his own treatment reasonable, given his experience as a registered nurse and the recommendations he received from his colleagues. *See* Ex. 8 at 4. And, more broadly, Petitioner's statements in his affidavits do not contradict the records themselves, but provide additional context of time and circumstances. *Kirby v. Sec'y of Health & Human Servs.*, 997 F.3d 1378, 1384 (Fed. Cir. 2021). Indeed, the June 2019 record reveals some ongoing sequelae, and helps connect the lengthy period of no treatment to a time longer than six months post-onset.

Overall – taking into account the remedial nature of the Program and after consideration of the entire record, the evidence supports a finding that severity has been met. At worst, this case represents a "close-call," and in "the Vaccine Program, petitioners are accorded the benefit of close calls." *Roberts v. Sec'y of Health & Human Servs.*, No. 09-427V, 2013 WL 5314698, at *10 (Fed. Cl. Aug. 29, 2013). (Petitioner should take note, however, that the existing record speaks to a particularly mild SIRVA, and therefore that any damages allowed in this case will be more modest than other claims).

### B. Factual Findings Regarding QAI Criteria for Table SIRVA

#### 1. Prior Condition

The first QAI requirement for a Table SIRVA is lack of a history revealing problems associated with the affected shoulder which were experienced prior to vaccination and would explain the symptoms experienced after vaccination. 42 C.F.R. § 100.3(c)(10)(i).

Respondent has not contested that Petitioner has met the first requirement under the QAI for a Table SIRVA. Additionally, I do not find any evidence that Petitioner suffered a pre-vaccination history of problems that would explain his post-vaccination shoulder

symptoms. Accordingly, I find that Petitioner has met this first criterion to establish a Table SIRVA.

### 2. Onset of Pain

A petitioner alleging a SIRVA claim must also show that he experienced the first symptom or onset within 48 hours of vaccination (42 C.F.R. § 100.3(a)(XIV)(B)), and that his pain began within that same 48-hour period (42 C.F.R. § 100.3(c)(10)(ii) (QAI criteria)). Respondent argues that Petitioner is unable to meet this requirement because "[he] did not seek treatment until approximately six weeks post vaccination." Response at 5.

I find, however, that the totality of the record supports the conclusion that Petitioner's shoulder pain most likely began within 48 hours of receiving the November 12, 2018 flu vaccine. Indeed, at his first post-vaccination medical appointment (for this is not a case with intervening records that rebut Petitioner's contentions), Petitioner specifically complained of left shoulder pain "that began after having a flu shot on the 12th of December." Ex. 5 at 6. Although Petitioner cited an incorrect date of administration, he unequivocally related his symptoms to vaccination. *Id.* Just two days later – at a December 28, 2018 orthopedic appointment, Petitioner again attributed his symptoms to vaccination and noted pain with range of motion that began "[i]mmediately . . . and ever since." *Id.* at 9. Furthermore, the affidavits submitted by Petitioner and his witness are consistent with the medical evidence, and I have found no reason not to deem them credible otherwise.

Finally, I do not find that Petitioner's six-week treatment delay undermines his onset assertions. Indeed, I have found *greater* delays to not be dispositive of this issue. *See, e.g., Tenneson v. Sec'y of Health & Human Servs.*, No. 16-1664V, 2018 WL 3083140, at *5 (Fed. Cl. Spec. Mstr. Mar. 30, 2018), *mot. for rev. denied,* 142 Fed. Cl. 329 (2019) (finding a 48-hour onset of shoulder pain despite a nearly six-month delay in seeking treatment); *Williams v. Sec'y of Health & Human Servs.*, No. 17-830V, 2019 WL 1040410, at *9 (Fed. Cl. Spec. Mstr. Jan. 31, 2019) (noting a delay in seeking treatment for five-and-a-half months because petitioner underestimated the severity of her shoulder injury); *Knauss v. Sec'y of Health & Human Servs.*, 16-1372V, 2018 WL 3432906 (Fed. Cl. Spec. Mstr. May 23, 2018) (noting a three-month delay in seeking treatment).

Accordingly, preponderant evidence establishes that the onset of Petitioner's left shoulder symptoms occurred within 48 hours of the November 12, 2018 flu vaccination.

### 3. Scope of Pain and Limited Range of Motion

The third QAI requirement for a Table SIRVA requires a petitioner's pain and reduced range of motion to be "limited to the shoulder in which the intramuscular vaccine was administered." 42 C.F.R. § 100.3(c)(10)(iii). Respondent argues that Petitioner has not met this criterion because "repeated examinations failed to show reduced range of motion in [Petitioner's] left shoulder." Response at 4.

Although I and my colleagues have previously discussed whether the existence of limited range of motion ("ROM") is a requirement of a Table SIRVA injury,[3] I am not aware of any definitive ruling on this issue.[4] But as in the *Dawson* ruling, I need not address the issue here because I find that the record evidence preponderates (albeit barely) in Petitioner's favor on this disputed issue.

While Respondent correctly asserts that Petitioner was noted to have full range of motion on exam during his two December 2018 medical appointments, it is also true that the contemporaneous medical records document subjective evidence to the contrary. Specifically, on December 26, 2018, Petitioner reported that his symptoms included "DROM [decreased range of motion] and soreness." Ex. 5 at 5. Likewise, on December 28, 2018, Petitioner reported pain with range of motion. *Id.* at 9. Additionally, on June 27, 2019 (over seven months post vaccination), Petitioner reported pain with adduction, external rotation, and extension despite a normal motor exam. *See* Ex. 6 at 5.

These statements corroborate Petitioner's written testimony in which he recounts an inability to reach his left arm over his head in the days following his November 12, 2018 vaccination. *See* Ex. 8 at 3. Petitioner's witness also provided an affidavit in which she avers that "it was nearly impossible for [Petitioner] to lift his arm past 90 degrees." Ex. 10 at 2.

---

[3] *See Dawson v. Sec'y of Health & Hum. Servs.*, No. 19-0278V, 2021 WL 5774655 (Fed. Cl. Spec. Mstr. Nov. 4, 2021) (finding sufficient evidence of limited ROM); *Portee v. Sec'y of Health & Hum. Servs.*, No. 16-1552V, 2018 WL 5284599 (Fed. Cl. Spec. Mstr. Sept. 14, 2018) (determining limited ROM manifesting within 48 hours is not required for a Table SIRVA).

[4] Limited ROM is mentioned twice in the SIRVA QAI. When defining SIRVA, the QAI indicates that "SIRVA manifests as shoulder pain *and* limited range of motion occurring after the administration of a vaccine intended for intramuscular administration in the upper arm." 42 C.F.R. § 100.3(c)(10) (emphasis added). Additionally, the third criterion requires that a petitioner's "[p]ain and reduced range of motion are limited to the shoulder in which the intramuscular vaccine was administered." 42 C.F.R. § 100.3(c)(10)(iii). As I discussed in *Dawson,* despite some language ambiguity, the first instance supports the premise that some limited ROM is needed to satisfy the Table SIRVA definition. *Dawson,* 2022 WL 5774655, at *2-3. However, the third criterion requires only that the reduced ROM be limited to the shoulder in which the vaccination was administered. *Id.* at *3.

The disputed range of motion issue presents a close call. However, the filed evidence (which includes both medical records and written testimony) preponderates in favor of the conclusion that Petitioner suffered from reduced range of motion in the days that followed his November 2018 vaccination, and that these symptoms were limited to Petitioner's left shoulder. As with the issue of severity, the degree of ROM issues and the hardships they imposed in this case on Petitioner appear quite limited – a factor that will be taken into account in calculating damages.

### 4. Other Condition or Abnormality

The last QAI criteria for a Table SIRVA states that there must be no other condition or abnormality which would explain a petitioner's current symptoms. 42 C.F.R. § 100.3(c)(10)(iv). Respondent has not contested that Petitioner meets this criterion, and there is no evidence in the record to the contrary. Thus, the record contains preponderant evidence establishing that there is no other condition or abnormality which would explain the symptoms of Petitioner's left shoulder injury.

### C. Other Requirements for Entitlement

Based on the above, I find that Petitioner has satisfied all requirements for a Table SIRVA and is entitled to a presumption of causation. However, even if a petitioner has satisfied the requirements of a Table injury or established causation-in-fact, he or she must also provide preponderant evidence of the additional requirements of Section 11(c). The overall record contains preponderant evidence to fulfill these additional requirements.

The record shows that Petitioner received a flu vaccine intramuscularly in his left shoulder on November 12, 2018 in California. Ex. 8 at 2; *see* Section 11(c)(1)(A) (requiring receipt of a covered vaccine); Section 11(c)(1)(B)(i)(I) (requiring administration within the United States or its territories). There is no evidence that Petitioner has collected a civil award for his injury. Section 11(c)(1)(E) (lack of prior civil award). Additionally, as stated above, I have found that Petitioner suffered the residual effects of his shoulder injury for more than six months. *See* Section 11(c)(1)(D)(i)(statutory six-month requirement).

Thus, based upon all of the above, Petitioner has established that he suffered a Table SIRVA – albeit a limited and fairly mild case. Additionally, he has satisfied all other

requirements for compensation.[5] I therefore find that Petitioner is entitled to compensation in this case.

### D.  Conclusion

Based on the entire record, I find that Petitioner has provided preponderant evidence satisfying all requirements for a Table SIRVA and the Vaccine Act's severity requirement for both Table and non-Table claims. Petitioner is entitled to compensation in this case. A subsequent order will set further proceedings towards resolving damages (and I reiterate my earlier points that this case is not one in which a large pain and suffering award (even approaching $50,000.00) is called for, and therefore Petitioner must factor in the overall mild nature of the injury in seeking damages).

**IT IS SO ORDERED.**

<u>**s/Brian H. Corcoran**</u>
Brian H. Corcoran
Chief Special Master

---

[5] Because I have found that Petitioner has demonstrated a Table injury, there is no need to address Petitioner's "causation-in-fact" allegation.